UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY JOSEPH WHITE,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:13-cv-02630-AC<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

I.   PROCEDURAL BACKGROUND

Plaintiff, born May 19, 1988, applied on September 23, 2010 for DIB and SSI, alleging disability beginning January 1, 2009. Administrative Transcript ("AT") 177, 179. Plaintiff alleged he was unable to work due to Ehlers Danlos Syndrome and problems with his legs, back, cartilage and tendons. AT 204. In a decision dated October 4, 2012, the ALJ determined that plaintiff was not disabled. AT 37–38. The ALJ made the following findings (citations to 20

C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since January 1, 2009, the alleged onset date.
>
> 3. The claimant has the following severe impairments: Ehlers-Danlos Syndrome with leg, back, ligament and cartilage problems; anxiety and depression.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant had the residual functional capacity to lift and carry less than 10 pounds frequently and 10 pounds occasionally; he can stand and walk up to 4 hours out of an 8-hour day and he can sit up to 6 hours out of an 8-hour day; he can frequently push and pull with the bilateral upper extremities; he can occasionally climb stairs and ramps but should never climb ladders, ropes or scaffolds; he can occasionally balance, stoop, kneel, crouch and crawl; he can frequently handle and finger bilaterally; he can frequently reach in all directions; he should avoid exposure to vibrations and hazards such as unprotected heights and moving machinery; he is limited to performing simple routine tasks.
>
> 6. The claimant is unable to perform any past relevant work.
>
> 7. The claimant was born on May 19, 1988 and was 20 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.
>
> 8. The claimant has at least a high school education and is able to communicate in English.
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that claimant is "not disabled," whether or not the claimant has transferable job skills.
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2009, through the date of this decision.

AT 24–37.

////

## II. FACTUAL BACKGROUND

Born on May 19, 1988, plaintiff was 20 years old on the alleged onset date of disability and 24 at the hearing before the ALJ. AT 46, 179. Plaintiff has a high school diploma. AT 52. In the past, he worked as a shipping and receiving clerk, a box packer and a machine operator. AT 228.

## III. ISSUES PRESENTED

Plaintiff's contentions can be summed as follows: (1) the ALJ improperly evaluated the medical opinions in the record; (2) the ALJ improperly assessed plaintiff's RFC; (3) the ALJ posed an incomplete hypothetical to the vocational expert; (4) the ALJ improperly discredited plaintiff; and (5) the ALJ improperly discredited the testimony of third-party lay witnesses.

## IV. LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability

or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229–30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## V. ANALYSIS

A.      Medical Opinions

Plaintiff contends the ALJ improperly rejected the opinion of plaintiff's treating physician, Dr. Matthew Symkowick.  There are three types of physicians relevant to disability determinations: treating physicians, examining physicians, and nonexamining physicians.  "If a treating doctor's opinion is not contradicted by another doctor (i.e., there are no other opinions from examining or nonexamining sources), it may be rejected only for 'clear and convincing' reasons supported by substantial evidence in the record."  See Ryan v. Comm'r of Soc. Sec. Admin., 528 F.3d 1194, 1198 (9th Cir. 2008); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). "If the ALJ rejects a treating or examining physician's opinion that is contradicted by another doctor, he must provide specific, legitimate reasons based on substantial evidence in the record." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); Ryan, 528 F.3d at 1198.

"[T]he medical opinions of a claimant's treating physicians are entitled to special weight." Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988).  If the ALJ disregards a treating physician's opinion, the ALJ must "set[ ] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. (quoting Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir.1986)).  Moreover, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  "To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions." Esposito v. Astrue, 2012 WL 1027601, CIV S-10-2862-EFB at *3 (E.D.Cal. Mar. 26, 2012).

////

4

A nonexamining physician's function is to read medical evidence in a claimant's case records, decide whether or not the claimant's impairments meet or equal the Listings, and determine the claimant's Residual Functional Capacities. 20 C.F.R. § 416.927(e)(1)(i). Because nonexamining physicians do not have the benefit of hearing the claimant's complaints of pain, their opinions as to claimant's pain are of "very limited value." Penny v. Sullivan, 2 F.3d 953, 957 (9th Cir. 1993).

On December 9, 2011, Dr. Matthew Symkowick, plaintiff's primary care physician, completed a residual functional capacity ("RFC") questionnaire for plaintiff. AT 680–83. He reported plaintiff's diagnoses of chronic pain, posttraumatic stress disorder and anxiety. AT 680. Dr. Symkowick opined that plaintiff's symptoms of pain, fatigue and depression are severe enough to interfere with his attention and concentration on a frequent basis. AT 680. He also opined that plaintiff can walk one-to-two city blocks at a normal pace before needing to rest, he can sit for 30 minutes at a time and for a total of at least six hours in an eight-hour workday, he can stand for 30 minutes at a time and for a total of two hours in an eight-hour workday, he would need a three-minute walking break every 45 minutes in an eight-hour workday, required a job with a sit-stand option, and would require daily unscheduled breaks. AT 681–82. Dr. Symkowick further concluded that plaintiff could rarely lift and carry 10 pounds and occasionally lift less than 10 pounds, he could rarely twist, stoop, crouch, climb stairs, climb ladders, and he had significant limitations in reaching, handling, and fingering. AT 682. He estimated that plaintiff would miss four or more workdays per month as a result of his impairments. AT 683. Dr. Symkowick also provided two disability reports on behalf of plaintiff, opining that plaintiff was permanently and totally disabled. AT 688, 895.

The ALJ did not give controlling weight to Dr. Symkowick's opinions. AT 35. The ALJ reasoned that the opinions came in the form of a fill-in-the-blank/check box form with no supporting documentation. AT 35. The ALJ also gave specific reasons for rejecting Dr. Symkowick's opinions. In rejecting Dr. Symkowick's opinion on plaintiff's psychiatric condition, the ALJ reasoned that mental impairments were outside of Dr. Symkowick's field of expertise as he is a family physician. AT 35. In rejecting Dr. Symkowick's opinion regarding

1  plaintiff's functional level, the ALJ reasoned that the objective evidence in the record does not
2  support that functional level.  AT 35.  Plaintiff contends these were not clear and convincing
3  reasons for rejecting the opinions of Dr. Symkowick.  However, the ALJ needed to state only
4  specific and legitimate reasons for rejecting Dr. Symkowick's opinions because they were
5  controverted by the opinions of Drs. Lewis (AT 618 [plaintiff could stand and walk up to four
6  hours, sit for up to six hours, lift and carry 20 pounds occasionally and 10 pounds frequently, he
7  could occasionally climb, balance, stoop, kneel, crouch crawl and reach, would have difficulty
8  kneeling and squatting, has poor balance, and should be kept away from heights and heavy
9  machinery]), Acinas (AT 622 [plaintiff had the capacity to perform light work]), and Hartman
10  (AT 657–58 [agreeing with Dr. Acinas's assessment]).  See Valentine, 574 F.3d at 692; Ryan,
11  528 F.3d at 1198.

12  As to Dr. Symkowick's opinion that plaintiff was permanently and completely disabled,
13  the ALJ correctly rejected this opinion because a determination that plaintiff is disabled or unable
14  to work is an administrative finding and not a medical opinion.  As to the ALJ's second reason for
15  rejecting Dr. Symkowick's opinions—that they lacked supporting documentation—an ALJ may
16  reject an opinion that is not supported by the record.  See Crane v. Shalala, 76 F.3d 251, 253 (9th
17  Cir. 1996) (evidence of an impairment in the form of "check-off reports" may be rejected for lack
18  of explanation of the bases for their conclusions).  As to the ALJ's third reason for rejecting the
19  opinion, the ALJ concluded that the specialists were better trained and prepared to provide an
20  opinion as to plaintiff's mental state.  Unlike Sprague, 812 F.2d 1226, cited by plaintiff, the ALJ
21  in this matter did not concluded there was a lack of psychiatric evidence.  Rather, the ALJ chose
22  to credit the opinion offered by mental health professionals, as opposed to the opinion of a family
23  practitioner.  Finally, the objective evidence does not support Dr. Symkowick's opinion.  The
24  ALJ thoroughly recounted plaintiff's medical history.  AT 27–32.  The ALJ also explained that
25  plaintiff would have trouble returning to his past work but that he retained normal motor strength
26  and coordination, had fair control over his pain, and his cognition and memory were intact, all of
27  which allowed plaintiff to perform less strenuous work.  AT 35.  The ALJ articulated specific and
28  legitimate reasons supported by substantial evidence for rejecting Dr. Symkowick's opinion.

1  There was no error in the evaluation of the medical opinions in the record.

2  B.     RFC Assessment

3      Plaintiff contends the ALJ's RFC assessment is not supported by substantial evidence. In particular, plaintiff asserts the ALJ failed to include work-related limitations resulting from his Ehlers-Danlos Syndrome, such as anxiety and depression. In determining a claimant's RFC, an ALJ must assess all the evidence to determine what capacity the claimant has for work despite her impairments. See 20 C.F.R. §§ 404.1545(a), 416.945(a). The court will affirm the ALJ's determination of plaintiff's RFC if the ALJ applied the proper legal standard and her decision is supported by substantial evidence. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). An examining physician's opinion alone constitutes substantial evidence if it rests on that physician's own independent examination. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ assessed plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant had the residual functional capacity to lift and carry less than 10 pounds frequently and 10 pounds occasionally; he can stand and walk up to 4 hours out of an 8-hour day and he can sit up to 6 hours out of an 8-hour day; he can frequently push and pull with the bilateral upper extremities; he can occasionally climb stairs and ramps but should never climb ladders, ropes or scaffolds; he can occasionally balance, stoop, kneel, crouch and craw; he can frequently handle and finger bilaterally; he can frequently reach in all directions; he should avoid exposure to vibrations and hazards such as unprotected heights and moving machinery; he is limited to performing simple routine tasks.

AT 27. In making this determination, the ALJ took into account those limitations for which there was support in the record, including the medical opinions of Drs. Palmer and Lewis. AT 22–31.

Dr. Richard Palmer performed a comprehensive psychiatric evaluation of plaintiff on February 6, 2011. AT 608. Dr. Palmer diagnosed plaintiff with major depressive disorder, anxiety disorder, and a Global Assessment Functioning ("GAF") of 58.[1] AT 611. He provided

---

[1] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR"). A 51 to 60 GAF indicates "[moderate] (continued…)

7

plaintiff's functional assessment as follows:

> The claimant is capable of managing funds as evidenced by history of appropriate financial management.
>
> The claimant is able to adequately perform one or two-step simple repetitive tasks and is able to adequately perform complex tasks as there are no noted intellectual impairments at this time.
>
> The claimant has a good ability to accept instructions from supervisors and interact with coworkers and the public. There are no noted social impairments at this time.
>
> The claimant is able to perform work activities on a consistent basis without special or additional instruction as there are no noted intellectual impairments at this time.
>
> The claimant has a fair ability to maintain regular attendance in the workplace as mental health symptoms may impact attendance.
>
> The claimant has a fair ability to complete a normal workday or workweek without interruptions from a psychiatric condition as mental health symptoms may impact attendance.
>
> The claimant has a fair ability to handle normal work related stress from a competitive work environment. Mental health symptoms may impact the claimant's ability to handle work related stress.

AT 611–12. The ALJ assigned great weight to this opinion. AT 36.

Dr. Rose Lewis performed a comprehensive internal medicine evaluation of plaintiff on February 10, 2011. AT 615. Dr. Lewis diagnosed plaintiff with chronic pain syndrome secondary to Ehlers-Danlos 3 syndrome. AT 618. She opined that plaintiff could stand and walk up to four hours, sit for up to six hours, lift and carry 20 pounds occasionally and 10 pounds frequently, could occasionally climb, balance, stoop, kneel, crouch crawl and reach, would have difficulty kneeling and squatting, has poor balance, and should be kept away from heights and heavy machinery. AT 618. The ALJ assigned great weight to this opinion as well. AT 36.

Plaintiff contends the ALJ failed to take into account work-related limitations resulting from his Ehlers-Danlos Syndrome. To the contrary, Dr. Lewis diagnosed plaintiff with chronic pain syndrome secondary to Ehlers-Danlos 3 syndrome. AT 618. Accordingly, in assigning great

---

symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)." DSM IV-TR at 34.

1  weight to the opinion of Dr. Lewis, the ALJ accounted for plaintiff's work-related limitations
2  resulting from his Ehlers-Danlos Syndrome. As demonstrated above, the ALJ reasonably
3  accounted for the limitations expressed in the opinions of Drs. Palmer and Lewis, assigning those
4  opinions great weight. The ALJ's RFC assessment was thus supported by substantial evidence.

C. Hypothetical Posed to Vocational Expert

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). However, the ALJ need only include the limitations that he or she finds to exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. DeLore v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. Embrey, 849 F.2d at 422–23.

Plaintiff contends the ALJ failed to include all of his limitations in the hypothetical posed to the vocational expert. In posing the hypothetical, the ALJ considered all of plaintiff's limitations that were supported by substantial evidence in the record. AT 85–87. The hypothetical was consistent with the ALJ's RFC assessment of plaintiff. AT 27, 85–87. The ALJ was not required to include any additional limitations as plaintiff suggests because the ALJ only included those limitations which the ALJ found to exist and were supported by substantial evidence. Accordingly, the hypothetical reflected all of plaintiff's limitations. The ALJ did not err in posing the hypothetical to the vocational expert.

D. Plaintiff's Credibility

Plaintiff further contends that the ALJ failed to provide sufficient reasons for discrediting his subjective complaints. The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the

9

1  ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873–74 (9th

2  Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility

3  finding to be supported by "a specific, cogent reason for the disbelief").

4  In evaluating whether subjective complaints are credible, the ALJ should first consider

5  objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341,

6  344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ

7  then may consider the nature of the symptoms alleged, including aggravating factors, medication,

8  treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the

9  applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

10 testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

11 prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d

12 1273,1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-

13 01; SSR 88-13. Work records, physician and third-party testimony about nature, severity and

14 effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.

15 Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an

16 allegedly debilitating medical problem may be a valid consideration by the ALJ in determining

17 whether or not the alleged associated pain constitutes a significant nonexertional impairment. See

18 Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may

19 rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458

20 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172,

21 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering,

22 the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

23 Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

24 Plaintiff reported that he was unable to work due to his Ehlers Danlos Syndrome and

25 problems with his legs, back, cartilage and tendons. AT 204. The ALJ found plaintiff's

26 statements concerning the intensity, persistence and limiting effects of plaintiff's symptoms

27 partially credible for several reasons. AT 32. The ALJ considered that plaintiff's daily activities

28 and allegations of disabling pain were disproportionate to the record (AT 377 [plaintiff reported

inability to use wrists however his hand strength and sensation were normal]) and that plaintiff had poor compliance with psychiatric treatment (AT 852 [physician noting plaintiff has a history of noncompliance with therapy and other psychiatric programs available to him]; 892 [plaintiff was terminated from the Psychiatric Intensive Outpatient Program for lack of attendance]). AT 33. The factors considered by the ALJ in partially discrediting plaintiff are valid and supported by the record.

E.   Third-Party Reports

Plaintiff asserts that the ALJ failed to properly evaluate third party reports from Donald White, plaintiff's father, Mary Ann Bea, plaintiff's grandmother, and Andrea White, plaintiff's sister. "[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." Nyguen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala, 12 F.3d 915, 918–19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition). "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919; see also Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006) (where ALJ fails to properly discuss competent lay testimony favorable to plaintiff, court cannot consider error to be harmless unless it can confidently conclude no reasonable ALJ, when fully crediting testimony, could have reached different disability determination). "If the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (citing Valentine, 574 F.3d at 694).

Ms. White indicated that she saw plaintiff a few times every month. AT 300. She reported that plaintiff spends time with his grandmother, feeds and cleans up after his dog, has trouble sleeping at night, does not normally prepare his own meals, can perform house work, and is antisocial. AT 300–04. Ms. Bea indicated that she lives with plaintiff. AT 293. She reported that plaintiff feeds and cleans up after his dog, as well as takes his dog for short walks. AT 294. Ms. Bea further stated that plaintiff can heat his own food, take out the garbage, shop for

incidentals, and becomes depressed and irritable due to his condition. AT 295–97. Mr. White reported that he spend approximately eight hours per week with plaintiff. AT 286. He further reported that plaintiff feeds and cleans up after his dog, can shop for groceries, and experiences depression. AT 287–97.

The ALJ found these third-party statements partially credible. With respect to Ms. White, the ALJ found her statements partially credible because she did not have frequent contact with plaintiff and was relying on claimant's description of his activities. AT 34. With regard to Ms. Bea and Mr. White, the ALJ gave little credibility to their allegations of debilitation because both reported that plaintiff could microwave food, take short walks, feed his dog, clean up after his dog, and shop, actions inconsistent with the level of disability alleged. AT 34. The ALJ considered the third-party statements and in partially rejecting them, gave reasons germane to each witness. There was no error in considering the third-party statements.

## VI. CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 18) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 23) is granted; and

3. Judgment is entered for the Commissioner.

DATED: March 6, 2015

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE